UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

Case:2:20-cr-20444
Judge: Hood, Denise Page
MJ: Stafford, Elizabeth A.
Filed: 09-23-2020 At 09:31 AM
INDI USA V. SEALED MATTER (DA)

v.

PARAG BAROT,

    Defendant.
_____/

VIO:  18 U.S.C. § 1349
18 U.S.C. § 2
18 U.S.C. § 1957
18 U.S.C. § 982
18 U.S.C. § 371
42 U.S.C. § 1320a-7b

## INDICTMENT

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### The Medicare Program

1. The Medicare program was a federal health care program providing benefits to persons who were 65 or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4. National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan. The Zone Program Integrity Contractor ("ZPIC") was the contractor charged with investigating fraud, waste, and abuse in the Medicare Program. Various Medicare contractors performed this function in the State of Michigan, including AdvanceMed, which became the ZPIC in or around May 2015.

5. Medicare claims submitted electronically or through wire transmission by Medicare providers located in the State of Michigan were processed outside the state of Michigan.

6. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing

reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

7. Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as an "NPI"). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that medical provider.

8. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, patient, and services rendered.

9. Health care providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form. These records

3

were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

10. Medicare only covered services that were both medically necessary and rendered.

11. A home health agency was an entity that provided health care services, including but not limited to skilled nursing, physical and occupational therapy, and speech pathology services to homebound patients.

12. Medicare only covered home health services, if:

    a. the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

    b. the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

    c. the home health agency must have been approved by Medicare (Medicare-certified); and

    d. the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

4

### Federal Anti-Kickback Statute Compliance

13. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

### The Related Home Health Agency

14. Bliss Home Health Care, Inc. ("Bliss") was a Michigan corporation doing business at 31700 W. 13 Mile Road, Suite 204, Farmington Hills, Michigan 48334. Bliss was enrolled as a participating Medicare provider and submitted claims to Medicare. Bliss was a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and skilled nursing services to patients.

### The Defendant and Related Entities

15. PARAG BAROT was a resident of Oakland County and Wayne County, Michigan. BAROT was the controller, operator, and owner of Bliss, which conducted business throughout the Eastern District of Michigan. BAROT assumed control and ownership of Bliss in or around September 2017.

16. Individual A was a resident of Oakland County, Michigan, and was a patient recruiter for Bliss.

17. Individual B was a resident of Oakland County, Michigan, and operated an adult day care center in Detroit, Michigan, that purportedly provided care for, among others, patients who were elderly and mentally ill.

## Count 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

### PARAG BAROT

18. Paragraphs 1 through 17 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19. From in or around June 2018 and continuing through in or around January 2020, in Oakland and Wayne Counties, in the Eastern District of Michigan, and elsewhere, PARAG BAROT, Individual A, and Individual B, did willfully and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

    a. to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially

6

false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services; and

      b. to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

### Purpose of the Conspiracy

20.    It was the purpose of the scheme and artifice for the Defendant and his co-conspirators to unjustly enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for services that were medically unnecessary and not eligible for reimbursement; (b) offering, paying, soliciting, and receiving kickbacks and bribes for the purpose of arranging for the use of Medicare beneficiary information as the bases of claims submitted for

home health care services, physician services, and other services; (c) concealing the submission of false and fraudulent claims to Medicare, and the receipt and transfer of the proceeds of the fraud; and (d) diverting proceeds of the fraud for their personal use and benefit.

## The Manner and Means of the Conspiracy

21. The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

22. PARAG BAROT certified to Medicare that he would comply with all Medicare rules and regulations, and federal laws, including that he would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that he would refrain from violating the Anti-Kickback Statute.

23. PARAG BAROT owned and controlled a home health agency, Bliss, for the purpose of submitting false and fraudulent claims to Medicare seeking reimbursement for beneficiaries who did not qualify for home health care, as they were not homebound, and whose Medicare identification numbers were procured through kickback and bribes.

24. PARAG BAROT and others offered and provided kickbacks and bribes to Individual A, Individual B, and others, as an inducement to refer Medicare

beneficiaries to Bliss for home health care services, even though such services were medically unnecessary.

25.  The Medicare beneficiaries referred to BAROT by Individual A and Individual B were patients of Individual B's adult day care center and were not, in fact, homebound.  Many patients referred by Individual A and Individual B to BAROT and Bliss suffered from mental illness and were fully ambulatory.  These patients had no need for, or ability to comprehend, the home health care services that Bliss purportedly provided to them.

26.  PARAG BAROT, Individual A, Individual B, and others submitted and caused Bliss to submit false and fraudulent claims, through interstate wires, to Medicare for home health services purportedly rendered to Medicare beneficiaries, when in truth and in fact, such home health services were not medically necessary and were not eligible for Medicare reimbursement.  As a result of these false and fraudulent claims submitted to Medicare through interstate wires, Medicare made payments to Bliss in an amount in excess of $275,000.

All in violation of Title 18, United States Code, Section 1349.

**Count 2**
**Conspiracy to Pay and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

**PARAG BAROT**

27. Paragraphs 1 through 17 and 22 through 26 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

28. From at least in or around June 2018, and continuing through in or around January 2020, the exact dates being unknown, in Oakland and Wayne Counties, in the Eastern District of Michigan, and elsewhere, the Defendant, PARAG BAROT, Individual A, and Individual B, did willfully and knowingly conspire and agree with each other and others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

    a. to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

    b. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind in return for referring an

individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

## Purpose of the Conspiracy

29. It was a purpose of the conspiracy for the defendant and his co-conspirators to unjustly enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes in return for Medicare beneficiary referrals; and (2) submitting and causing the submission of claims to Medicare for purported home health services provided to those recruited beneficiaries.

## Manner and Means of the Conspiracy

30. The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

31. PARAG BAROT and others paid and caused the payment of illegal kickbacks and bribes to Individual A, Individual B, and others in exchange for referring Medicare beneficiaries and providing Medicare beneficiary information that BAROT used to support the submission of claims to Medicare, through Bliss, for purported home health care services.

32.  PARAG BAROT, Individual A, Individual B, and others disguised and concealed the kickbacks and bribes to Individual A, Individual B, and others through a sham contract with Individual A's company.

33.  PARAG BAROT wrote checks to Individual A's company from bank accounts, including Huntington Bank account x6150 and Chase Bank account x7321. Individual A would in turn pay Individual B in cash with proceeds from the checks as compensation for recruiting and referring Medicare beneficiaries to Bliss.

## Overt Acts

34.  In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, at least one of the following overt acts, among others:

35.  On or about December 7, 2018, Individual A sent PARAG BAROT a text message about receiving payment for the referral of Medicare beneficiaries.

36.  On December 11, 2018, PARAG BAROT paid and caused the payment of approximately $5,000 to Individual A, in the form of check number 240, drawn on Huntington Bank account x6501, held in the name of Bliss, made payable to Individual A's company, in exchange for referring Medicare beneficiaries and providing Medicare beneficiary information.

37. On or about October 16, 2019, PARAG BAROT met with Individual A and Individual B at Bliss and discussed the referral of Medicare beneficiaries to Bliss.

38. On or about October 16, 2019, PARAG BAROT paid and caused the payment of approximately $5,600 to Individual A, in the form of check number 1050, drawn on Chase Bank account x7321, held in the name of Bliss, made payable to Individual A's company, in exchange for referring Medicare beneficiaries and providing Medicare beneficiary information.

All in violation of Title 18, United States Code, Section 371.

## Counts 3-4
### 42 U.S.C. § 1320a-7b(b)(2)(A)—Payment of Kickbacks and Bribes in Connection with a Federal Health Care Program

### PARAG BAROT

39. Paragraphs 1 through 17, 22 through 26 and 31 through 33 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

40. On or about the dates set forth below, in Oakland County, in the Eastern District of Michigan, and elsewhere, PARAG BAROT, did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, to any person to induce such person to refer an individual to a person for the furnishing and arranging for

the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Payment | Description | To | From | Approximate Amount |
|---|---|---|---|---|---|
| 3 | December 11, 2018 | Check No. 240 | Individual A | BAROT | $5,000 |
| 4 | October 16, 2019 | Check No. 1050 | Individual A | BAROT | $5,600 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

### (18 U.S.C. § 982(a)(7) - Criminal Forfeiture)

41.     The allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

42.     As a result of the violations alleged in Counts 1 through 5 as set forth in this Indictment, Defendant PARAG BAROT shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

43. <u>Money Judgment</u>: Such property includes, but is not limited to, a forfeiture money judgment against BAROT in an amount to be determined, representing the total value of all property subject to forfeiture as a result of his violation(s) of Title 18, United States Code, Sections 371 and 1349, and Title 42 United States Code, Section1320a, as alleged in Counts 1 through 4 of this Indictment.

44. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek to forfeit any other property of Defendant PARAG BAROT up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.					s/Grand Jury Foreperson
							Grand Jury Foreperson


MATTHEW SCHNEIDER
United States Attorney

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9618
regina.mccullough@usdoj.gov

DANIEL KAHN
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005


s/JOHN J. MCCORMACK
JOHN J. MCCORMACK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005
 (202) 262-7011
John.mccormack.iv@usdoj.gov

Date:  September 23, 2020

| United States District Court<br>Eastern District of Michigan | Criminal Case | Case: 2:20-cr-20444<br>Judge: Hood, Denise Page<br>MJ: Stafford, Elizabeth A.<br>Filed: 09-23-2020 At 09:31 AM<br>INDI USA V. SEALED MATTER (DA) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)¹: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: MPD |

**Case Title:** USA v. PARAG BAROT

**County where offense occurred:** Oakland County

**Check One:**   ☒ Felony      ☐ Misdemeanor      ☐ Petty

  ✓ Indictment/____Information --- no prior complaint.
  ____Indictment/____Information --- based upon prior complaint [Case number:                    ]
  ____Indictment/____Information --- based upon LCrR 57.10 (d) [Complete Superseding section below].

**Superseding Case Information**

**Superseding to Case No:** _____     **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 23, 2020
Date

*/s/ Malisa Dubal for/*

John J. McComack, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 262-7011
Fax:    (313) 226-0816
E-Mail address: John.McCormack.IV@usdoj.gov
Attorney Bar #: MA 676073, NH 19569

---

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.